# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

United States of America,                                Crim. No. 08-251 (JNE/JJG)

       Plaintiff,

v.                                                                       **REPORT AND RECOMMENDATION**

Jeffrey Scot Graham,

       Defendant.

---

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned on February 5, 2009, for a pretrial motion hearing. David M. Genrich, Assistant United States Attorney, appeared for the Government. Steve L. Bergeson, Esq. appeared for Defendant Jeffrey Scot Graham ("Graham"). This case is scheduled to be tried before the Honorable Joan N. Ericksen and has been referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Presently before the Court is Graham's motion to suppress evidence seized pursuant to a search warrant (Doc. No. 25).[1] For the reasons set forth below, the Court recommends that the motion be denied.

## I.   BACKGROUND

### A.   The Warrant Application and Supporting Affidavit

Sherburne County Sheriff's Office Investigator Andrew Ochs ("Ochs") submitted the affidavit in support of the search warrant at issue. The affidavit sets forth the following facts.

---

[1]   Graham also filed a motion to suppress statements (Doc. No. 26). At the hearing, his counsel said the motion was moot, and it accordingly should be denied as moot.

Ochs investigates crimes such as forgery, identity theft, and theft by swindle as an investigator for the Minnesota Financial Crimes Task Force.  On November 7, 2007, the Police Officers Federation of Minneapolis ("Federation") notified Ochs of a suspected equipment lease forgery and several unauthorized withdrawals from the Federation's bank account.  The police report of the suspected forgery stated that the Federation had contacted Northern Leasing Systems, Inc. ("Northern Leasing") in January 2006 to lease a wireless credit card reader. Federation president John Delmonico ("Delmonico") met with Graham, who was Northern Leasing's sales representative, and executed an agreement under which the Federation authorized a monthly withdrawal of $89.49 to lease the credit card reader.  In August 2006, the Federation's accountant noticed that $141.02 was being withdrawn each month.  Delmonico spoke with Graham, who agreed the withdrawals were incorrect and promised to resolve the issue.  But in February 2007, Graham stopped returning the Federation's phone calls, and the excessive withdrawals continued until the following month.

Northern Leasing later told an investigator that it had two equipment leases with the Federation.  The first lease—signed by Delmonico and Graham in January 2006—was legitimate.  However, the second lease—also supposedly signed by Delmonico and Graham— was not.  Delmonico later swore in an affidavit that he never signed the second lease.

After learning the above information, Ochs called Graham, who said the Federation had been refunded all of the money withdrawn from its account.  Graham said he no longer had the original leases and did not know where they were.  He said that signed leases are usually faxed to Northern Leasing.

Ochs next contacted the Shakopee Police Department and learned it was investigating Graham for fraud and identity theft.  According to Shakopee police reports, a man named David

2

Goodson ("Goodson") had hired Graham to start a credit card processing service for Goodson's business. About a year later, Goodson discovered that a $38,000 cash advance had been issued in his name but sent to a company named Splash Water Sports News at 1226 Fourth Avenue East in Shakopee, Minnesota. According to the Shakopee police, the money had actually been deposited into Graham's bank account. Goodson told Ochs that he continues to receive payment demands on loans and cash advances associated with Splash Water Sports, Inc.[2]

The Minnesota Secretary of State's website lists the address of Splash Water Sports News, Inc. as 1226 Fourth Street East, Suite 150, in Shakopee, Minnesota. Graham is the registered agent for that business. The website also lists that address for another business, Bank Card Inc., for which Graham is also the registered agent.

In September 2007, Splash Water Sport News employee Lori Leahy ("Leahy") contacted Minnesota Financial Crimes Task Force analyst Andria Brutsche about Graham. Leahy said Graham owned three businesses, including Splash Water Sport News, and she believed Graham had been taking credit card information from customers and using it to obtain cash advances. Ochs contacted Leahy and confirmed her employment with Splash Water Sport News. Leahy also told Ochs that Graham was obtaining cash advances from customers' credit cards and keeping the money. She said Graham would often call the office while working offsite and ask if certain faxes had arrived. If they had, he would rush to the office, take the fax, and leave. Leahy recalled that one of the faxes was a Wells Fargo Account statement and loan application bearing a name other than Graham's.

Another Splash Water Sport News employee, Susan Daly ("Daly"), told Ochs she had

---

[2]     Ochs' affidavit refers to Splash Water Sports Inc., Splash Water Sports News, Splash Water Sport News, Splash Water Sports News, Inc., and Splash Water Sport News Incorporated. The Court will assume these are different names for the same company.

worked for the company for three months as a salesperson.  She confirmed Leahy's description of Graham's use of the fax machine.  Daly had also seen several faxed loan applications not bearing Graham's name, and she had seen Graham sign documents with other names.  Daly told Ochs that Graham advertised BankCard Services on http://www.craigslist.org, and Ochs later verified two such advertisements.  The advertised phone number listed to BankCard Services in Shakopee, Minnesota.

Based on the above events, Ochs believed that Graham was engaging in identity theft and forgery and that evidence of those crimes would be found at his home and work address. Through training and experience, Ochs knew that people involved in identity theft and fraudulent activity often store information on their computers and cellular phones and use those devices to communicate about their illicit activity.  He believed that business paperwork, records, computer hardware and software, cellular telephones, electronic storage devices, and other categories of information related to Northern Leasing Systems, Inc., BankCard Services, American General, and Splash Water Sports, Inc. would be found at 926 Dakota Street and 1226 Fourth Avenue East, Suite 150, in Shakopee, Minnesota.  Ochs applied for a search warrant from a Scott County district judge on December 11, 2007.

### B.    The Warrant

The search warrant was issued the same day and authorized Ochs and other law enforcement personnel under his direction to search both the 926 Dakota Street South and the 1226 Fourth Avenue East addresses.  The officers were permitted to seize

> Business paperwork for Northern Leasing Systems Inc, BankCard Services, American General, and Splash Water Sports Inc, including but not limited to Bank records, ledgers, receipts, lease agreements, loan applications, cash advance applications; computer hardware consisting of all equipment which can collect, create, display, convert, [and] store[] data; Cellular Telephones; Hardware

4

including, but not limited to, any data-processing devices (such as central processing units, memory typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, digital cameras, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks); computer software that is used for the printing of checks; receipts indicating purchases made by credit card or check; papers or other documents containing names or other information about persons not residing at this address; papers or other documents containing the names or account numbers of persons or businesses; paper and items showing constructive possession of the residence being searched; safety deposit keys; records and other documents tending to show off-site storage facilities and/or locations.

(Gov't Ex. 1 at 8.)

As stated on the warrant, the issuing judge found probable cause to believe that the property and items described therein were stolen or embezzled, were used to commit a crime, constituted a crime, were intended to be used to commit a crime, or tended to show that a crime had been committed. The judge also found probable cause to believe that the property and items would be located at the two premises described in the warrant.

### C.    The Receipt, Inventory, and Return

The search warrant was executed at both addresses on December 12, 2007. Presumably Ochs was present at the execution of the warrant, given that his name is on the inventory. From the 1226 Fourth Avenue East address, officers seized paperwork, credit card scanners, a credit card reader, storage keys, rolodexes, magazines, business files, compact discs, computers, a portable hard drive, keyboards, mouses, and flash drives. From the 926 Dakota Street South address, officers seized a CPU, computer disks, credit card readers, deposit slips, checkbooks, other paperwork, a wallet, mail, and a shotgun, among numerous other items.

## II.     DISCUSSION

There are several serious problems with the application, affidavit, and search warrant under consideration, and Graham has presented forceful arguments in support of his motion to suppress.  He has identified several portions of the warrant as lacking probable cause.  He also argues that the warrant was not particular in some respects but was overbroad in others.  For the most part, these arguments are  best addressed according to the evidence to which they pertain, and the Court will organize its discussion by evidentiary category.

### A.     Evidence Pertaining to American General and BankCard Services

#### 1.     Probable Cause

The probable cause standard is a "practical, nontechnical concept[]."  *Brinegar v. United States*, 338 U.S. 160, 176 (1949).  In assessing whether probable cause exists when a warrant is first presented, the judge is permitted to form "certain common-sense conclusions" from the information presented in the warrant application.  *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).  The judge must keep in mind "that affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law have no proper place in this area.'"  *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).  The duty of the judge who signs the warrant is "to make a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238.  The affidavit must establish a "nexus . . . between the item to be seized and criminal behavior."  *Warden v. Hayden*, 387 U.S. 294, 307 (1967).  There must also be a nexus between the contraband and the place to be searched.  *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

In reviewing a search warrant for probable cause, the Court must give "great deference" to the issuing court's original determination. *Gates*, 462 U.S. at 236 (citation omitted). Where, as in the present case, an issuing court relies solely on an affidavit to determine whether probable cause exists for the warrant, the reviewing court may consider "only that information which is found within the four corners of the affidavit . . . in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982).

The most troubling challenge raised by Graham is the search warrant's authorization to seize items pertaining to American General. Nowhere does the affidavit discuss this business in any detail. American General is mentioned only once in the affidavit, when Ochs lists the items for which he is requesting permission to search. The affidavit does not link Graham in any way to American General, nor does it connect American General with any crime or with the premises to be searched.

Conceding that the affidavit does not meaningfully refer to American General, the Government asks the Court to infer that American General could have been one of the three businesses mentioned by Leahy as owned by Graham. But the affidavit already names and links three other businesses to Graham: Splash Water Sports News, Northern Leasing, and BankCard Services. The Government's requested inference strains the bounds of probable cause. There is simply no link between American General and any criminal behavior or contraband; nor is there even a remote connection between American General and Graham. The Court therefore must conclude that the affidavit does not set forth probable cause to seize items associated solely with American General.

Graham makes a similar argument with respect to BankCard Services, but the Court has no difficulty finding probable cause for that entity. Graham is BankCard Services' registered

agent, and BankCard Services has the same address as Splash Water Sports News, Inc.  Graham advertised BankCard Services on a website, and the advertised phone number listed to BankCard Services in Shakopee.  Considered in the context of the entire affidavit, there was ample reason to believe that Graham was utilizing BankCard Services in his multi-faceted, credit card-based, financing scheme, and that items associated with BankCard Services could yield evidence of forgery or identity theft by Graham.

### 2.     The *Leon* Good Faith Exception

Even though the affidavit lacked probable cause to seize the items associated with American General, the evidence may still be admissible if the officers acted in good faith reliance on the search warrant.  The exclusionary rule was designed to deter wrongful police conduct; and thus "the deterrence rationale loses much of its force" when the police have acted "in complete good faith."  *Michigan v. Tucker*, 417 U.S. 433, 447 (1974).  The United States Supreme Court expanded this principle in *United States v. Leon*, 468 U.S. 897 (1984), holding that evidence must not be excluded if "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope."  *Id.* at 920.  The court reasoned that punishing an officer for a judge's mistake does not serve to deter Fourth Amendment violations.  *Id.* at 921.

There are four instances in which the *Leon* good faith exception to the exclusionary rule will not apply: (1) if the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) if the issuing judge "wholly abandoned his judicial role"; (3) when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) if the warrant is "so facially deficient-i.e., in failing to

particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citations and quotation omitted).  Graham relies on all but the first instance here.

Graham accuses the issuing judge of overlooking inconsistencies in the affidavit and failing to note that the affidavit contained no factual allegations about American General.  These circumstances do not amount to an abandonment of the neutral and detached judicial role.  *See United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (A "judge is neutral and detached if his or her impartiality cannot reasonably be questioned.") (citation omitted).  Conversely, the Supreme Court has identified what circumstances constitute abandonment of a judicial role.  In *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979), a judge not only signed the search warrant but participated in the search party and told officers which items to seize.  *Id.* at 326-27 (cited in *Leon*, 468 U.S. at 923).  Nothing of this nature occurred in Graham's case.

The third and fourth *Leon* categories depend on "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization."  *United States v. Kattaria*, 553 F.3d 1171, 1178 (8th Cir. 2009) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)).  Graham does not explain how the warrant on its face is invalid with respect to American General, and having examined the warrant separate from the application and affidavit, the Court concludes that the warrant's authorization to seize American General items is valid on its face.

The last possible ground for suppression is whether the supporting affidavit was so lacking in probable cause that it was entirely unreasonable to believe it existed.  This ground is applicable here.  The affidavit does not link American General to Graham, the premises, or any criminal activity.  Although the affidavit does describe Graham's ownership of several

businesses and how he obtained and used customer information, these details do not implicate or otherwise relate to American General.   Finally, although the affidavit outlines a fairly sophisticated scheme to defraud involving third-party entities and individuals, it would be no more reasonable to infer that American General was such an entity than it would be to make such an inference for any other unnamed entity.   The good faith exception therefore does not apply, and information relating solely to American General should be suppressed.

**B.      Items and Documents Associated with Graham**

The Fourth Amendment requires a search warrant to describe with particularity the items to be seized.  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).   The purpose of this requirement is to prevent "a general, exploratory rummaging in a person's belongings."   *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).   Here, the face of the search warrant appears to satisfy the particularity requirement.   The particular premises to be searched are identified as 926 Dakota Street South in Shakopee, Minnesota, and 1226 Fourth Avenue East, Suite 150, in Shakopee, Minnesota.   The particular property and things to be seized are identified as business records, computer hardware and software, cellular telephones, electronic storage devices, and similar items.   The particular crimes under investigation are identified as theft and embezzlement.[3]   In executing the warrant, however, the police seized several categories of information outside the parameters established by the warrant.

Graham argues that because he was not named in the warrant, the police should not have seized items such as his personal financial records, mail, and wallet.   However, Graham reads the

---

[3]      Graham contends that the warrant should have included a statutory reference in addition to the names of the alleged crimes.   Although this may be the better practice, it is not required. *See United States v. Horn*, 187 F.3d 781, 787 (8th Cir. 1999).   The Court finds the warrant's reference to embezzlement and stolen property sufficiently particular.

particularity requirement too broadly.  The search warrant authorized the seizure of "papers or other documents containing the names or account numbers of persons or businesses" and "paper and items showing constructive possession of the residence being searched."  (Gov't Ex. 1 at 1.) Graham's personal records, mail, and items in his wallet fall within these categories of information, and consequently, the seizure of Graham's personal property was lawful.

### C.        Items and Records Not Identified in Either the Warrant or the Affidavit

Graham challenges the seizure of several items associated with businesses that were not named in the search warrant, as well as items that were described on the inventory in general terms.  Such items included a merchants services agreement book, a folder marked Edina DRS, a folder labeled EVO Platinum, documents marked J Scot Graham Steaks, a folder labeled Spokes Models, documents for Bank Card Depot, business files, notebooks, folders, and miscellaneous paper work.  Graham's counsel admitted at the motion hearing that he had not examined the actual documents and items to ascertain whether they in fact exceeded the scope of the warrant.

The Court is unable to discern from the inventory list whether the challenged items fit into the categories of property authorized for seizure in the warrant.  Merely because the items were marked with business names other than those listed in the warrant, or were described in general terms, however, does not necessarily mean they exceeded the scope of the warrant. There is no requirement that each item seized must be listed in the warrant.  *See Mahlberg v. Mentzer*, 968 F.2d 772, 775-76 (8th Cir. 1992).   In the case at hand, there are several informational categories listed on the warrant to which the challenged items could pertain: "papers or other documents containing names or other information about persons not residing at this address," "papers or other documents containing the names or account numbers of persons or businesses," "paper and items showing constructive possession of the residence being

11

searched," or "records and other documents tending to show off-site storage facilities and/or locations." (Gov't Ex. 1 at 1.) As long as the items fell within one of these categories, were located at one of the premises being searched, and had a connection to theft or embezzlement, they came within the scope of the warrant.

In addition, the Court is mindful that "particularity must be assessed in terms of practicality. As a practical matter, it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain items." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007). Here, officers were authorized to seize numerous categories of documents, records, electronic devices, and computers. Some of these items would have taken hours or even days to review. *See id.* As a practical matter, the officers would not have time to review and list each and every document or piece of property on the inventory.

Lastly, Graham challenges the seizure of a shotgun from his home. The Government has agreed to return this item because its seizure was not authorized by the warrant.

### D.      The Warrant's Failure to State a Time Limitation

Graham next challenges the warrant's particularity because it failed to provide a timeframe for ascertaining which business records should be seized. A warrant must describe only two things with particularity: the place to be searched and the items to be seized. *See United States v. Grubbs*, 547 U.S. 90, 97 (2006). Graham has cited no authority that every warrant *must* include date restrictions in order to be facially valid. On the other hand, "the degree of specificity required [in a warrant] necessarily depends upon the circumstances of each particular case." *United States v. Strand*, 761 F.2d 449, 453 (8th Cir. 1985). Moreover, when there is probable cause to believe that fraud has permeated an entire business, a warrant that permits the seizure of all business records is not overbroad in scope. *United States v. Kail*,

804 F.2d 441, 445 (8th Cir. 1986).

Here, Ochs' investigation, as detailed in his affidavit, uncovered a multifaceted scheme of deception, forgery, and identity theft, lasting two years and involving several businesses. There was ample reason to believe that Graham had regularly used his businesses to conduct fraudulent activity over a period of several years.  As for the warrant itself, it specifically identified the businesses involved, the two premises to be searched, and the relatively narrow categories of items to be seized.  Although the warrant did not include a date restriction, the Court finds that the omission did not render the warrant insufficiently particular, given the nature and extent of the criminal activity under investigation.

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.      Jeffrey Scot Graham's motion to suppress evidence (Doc. No. 25) be **GRANTED** as to information relating solely to American General and **DENIED** in all other respects; and

2.      Jeffrey Scot Graham's motion to suppress statements (Doc. No. 26) be **DENIED AS MOOT**.

Dated this 12th day of March, 2009.               s/ *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **March 26, 2009**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses shall not exceed 3,500 words.  The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.  The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or if the district judge directs otherwise.